IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| THE UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | CIVIL ACTION NO. |
| V. | § | |
| | § | 3:07-CR-292-K |
| JAMES L. FANTROY, SR. | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION**

On May 21, 2008 the Court denied Defendant James L. Fantroy, Sr.'s ("Fantroy" or "Defendant") Request for Judgment of Acquittal and Motion for New Trial (Doc. No. 55). The Court issues this memorandum opinion in support of that order.

**I. Background**

Fantroy was convicted of embezzlement in violation of 18 U.S.C. § 666(a)(1)(A) after a jury trial on February 28, 2008. In Fantroy's motion for acquittal and motion for new trial, he contends that the Court erred by allowing the government to amend the indictment after the jury had been sworn. The Court finds Fantory's position to be without merit.

On September 27, 2007, a Grand Jury returned a one count indictment against Fantroy. The indictment charged as follows:

From on or about April 26, 2003, and continuing through on or

1

> about July 30, 2003, in the Dallas Division of the Northern District of Texas, defendant, James L. Fantory Sr., as an agent of Paul Quinn College, said organization receiving within the one-year period ending March 31, 2004, benefits in excess of $10,000.00 pursuant to a federal program from the United States Department of Housing and Urban Development involving a grant and other form of federal assistance, did unlawfully and knowingly embezzle, steal, obtain by fraud, and convert to the use of any person other than the rightful owner something of value of $5,000.00 or more, that is, *federal program* monies held in trust for Paul Quinn College. (emphasis added).

At trial on February 25, 2008, after the jury was selected and sworn, the Government moved to remove the words "federal program" from the indictment. Over a timely objection from Defendant, the Court granted the Government's request. Defendant contends that the removal of the words "federal program" impermissibly broadened the indictment against Defendant in violation of his Fifth and Sixth Amendment rights under the United States Constitution. The Government contends that the language removed from the indictment was surplusage, and that Defendant's rights were not violated.

## II. Amending the Indictment

The Fifth Amendment to the United States Constitution provides in relevant part that "No person shall be held to answer for a capital, or otherwise infamous crime, unless on presentment or indictment of a Grand Jury." U.S. Const. amend. V. The Sixth Amendment to the United States Constitution provides in relevant part that "In all criminal prosecutions, the accused shall enjoy the right . . . to be informed of the nature

and the cause of the accusation." U.S. Const. amend. VI.

Deriving from the guarantees of the Fifth and Sixth Amendment is a defendant's "right to be tried only on charges presented in an indictment returned by a grand jury." *Stirone v. United States*, 361 U.S. 212, 273 (1960). Generally, when an amendment to the indictment broadens the scope of the allegations made against a defendant, the defendants constitutional rights are violated. *See Id*. at 273-74 (finding error where the amendment to the indictment broadened the allegations against the defendant). Conversely, when an amendment to the indictment narrows the scope of the allegations made against a defendant, the defendants constitutional rights are generally not violated. *See United States v. Miller*, 471 U.S. 130, 141 (holding that an amendment to an indictment is permissible if it only removes "those allegations that are unnecessary to an offense that is clearly contained within [the indictment]."). The amendment did not violate Fantroy's constitutional rights because "federal program" was language that was unnecessary to the offense that was clearly outlined in the indictment. For that reason, the amendment complies with the standard articulated in *Miller*.

### A. The Offense Charged Against Fantory

Fantroy was charged with Embezzlement or Theft from a Program Receiving Federal Funds in violation of 18 U.S.C. § 666(a)(I)(A). The elements of that offense are as follows:

1.) The defendant was an agent of an organization,

2.) The defendant embezzled or stole monies held in trust for the organization of a value of $5,000.00 or more,

3.) The organization owned the monies that were embezzled or stolen, and

4.) The organization received benefits in excess of $10,000.00 in a one-year period under a federal program involving a grant.

18 U.S.C. § 666. In order to convict Fantory of the offense outlined above, the Government had to prove, *inter alia*, that Fantory embezzled or stole funds from Paul Quinn College, and that Paul Quinn College received funds from a federal program. *See Id*. The statute contains no requirement, however, that the Government prove that the monies allegedly stolen by the defendant were the same monies that were granted by the federal government. *See Id*. Nonetheless, when the Government indicted Fantroy, it alleged that he embezzled or stole "*federal program* monies held in trust for Paul Quinn College." The parties are in agreement that the inclusion of the phrase "federal program" was not necessary for the indictment to adequately allege a violation of the statute. As already mentioned, the parties disagreement centers on the constitutional significance of the removal of the phrase "federal program" from the indictment. Before the Court considers the issue raised in the case at bar, it turns to two similar cases considered by the Fifth Circuit.

### B. United States v. Ramirez

The United States Court of Appeals for the Fifth Circuit addressed a similar issue in *United States v. Ramirez*, 670 F.2d 27 (5th Cir. 1982). Ramirez was convicted on three

4

counts of violating 18 U.S.C. § 1426(b), involving the sale, disposition, and use of false or counterfeited naturalization or citizenship papers. *Ramirez*, 670 F.2d at 28. "The indictment charged, in pertinent part, that Ramirez knowingly sold false and counterfeited Texas birth certificates, 'as true and genuine,' to three Mexican aliens." *Id*. In her motion for acquittal, Ramirez asserted that an acquittal was appropriate based on the testimony of each of the three Mexican aliens who testified that they knew that the birth certificates were not "true and genuine." *Id*. The district court denied Ramirez's motion, allowed the government to strike the phrase "as true and genuine" from the indictment, and instructed the jury accordingly. *Id*.

On appeal, Ramirez argued that the amendment to the indictment violated her Fifth Amendment right to be tried only on charges returned by a grand jury. *Id*. Ramirez argued that she was prejudiced by the deletion of the phrase "as true and genuine" because her defense was predicated on the fact that she did not make any misrepresentations to her customers about the authenticity of the birth certificates—they knew the certificates were fraudulent. *Id*. at 29. Ramirez claimed that the deletion "effectively wiped out her defense." *Id*. The government argued the phrase "as true and genuine" was appropriately removed from the indictment as surplusage, and that the deletion did not alter or amend the substance of the indictment. *Id*. The Court of Appeals agreed. *Id*. at 30. Because the statute did not require proof that the birth certificates were sold "as true and genuine" and the defendant had no reasonable basis

5

to claim unfair surprise, the removal of the phrase was appropriate. *Id*. The Court noted that the deleted language was no more necessary to properly charging the offense "than would have been an added assertion that [the defendant] sold the forged documents 'while wearing a green hat.'" *Id*.

### C. United States v. Robles-Vertiz

The United States Court of Appeals for the Fifth Circuit again addressed a similar issue in *United States v. Robles-Vertiz*, 155 F.3d 725 (5th Cir. 1998) where the issue was whether the indictment had been constructively amended. In that case, Jose Robles-Vertiz was convicted of illegal transportation of aliens and aiding and abetting, in violation of 8 U.S.C. § 1324(a)(1)(A)(ii) and 18 U.S.C. § 2. *Id*. at 727. The indictment alleged that Robles-Vertiz transported an illegal alien named Monica Ramirez-Sanchez. *Id*. At trial, the evidence showed that Robles-Vertiz transported an illegal alien named Anna Guerrero, also known as Monica Martinez-Salazar. *Id*. On appeal, Robles-Vertiz argued that the indictment was constructively amended as a result of this discrepancy. *Id*. The government argued that the alien's name was surplusage "because the indictment could have properly charged Robles-Vertiz with transporting an *unnamed* alien." *Id*. at 729 (emphasis in original).

The Court of Appeals agreed with the government and held that the indictment was not constructively amended. *Id*. The Court noted, however, that if "Monica Ramirez-Sanchez" had been a second person involved in the smuggling scheme, the

result would have been different.  *Id*.  "That is because the indictment would have been broadened—the prosecution could have secured a conviction by proving the smuggling of *either* woman."  *Id*.  This, the Court concluded, would improperly allow the Government to prosecute "a theory that it had not presented to the grand jury."  *Id*.  But on the facts of the case before the Court of Appeals, it was clear that the indictment had simply misnamed the alias of the illegal alien in question.  *Id*.  The Court concluded that the error was nothing more than "a harmless immaterial variance that did nothing to prejudice [the defendant]," and that the defendant was "aware of which person the government intended to identify in the indictment."  *Id*.  Consequently, the Court affirmed the conviction.  *Id*. at 731.

### D.  Removing "Federal Program" from the Indictment

The removal of the phrase "federal program" from the indictment in the case at bar is fundamentally no different than the removal of the phrase "as true and genuine" in *Ramirez* or the change to the name of the illegal alien in *Robles-Vertriz*.  As mentioned earlier, the parties are in agreement that the allegation that the stolen monies were "federal program" monies is unnecessary for a charge under 18  U.S.C. § 666(a)(1)(A).  It is undisputed that the  indictment as amended contains allegations sufficient to support the charge that the defendant violated that statute.  The Government had to prove, *inter alia*, that Fantory embezzled or stole funds from Paul Quinn College, and that Paul Quinn College received funds from a federal program.  *See Id*.  The statute

contains no requirement, however, that the Government prove that the monies allegedly stolen by the defendant were the same monies that were granted by the federal government. *See Id*.

Fantroy takes the position that the amendment was improper because it deprived him of his defense that the monies he allegedly stole were not "federal program" monies. Fantroy's apparent defense—I stole money from Paul Quinn College, but the money I stole was not "federal program" money—is no defense at all. The indictment clearly alleged what Fantroy was charged with embezzling or stealing—monies that were held in trust for Paul Quinn College. The fact that the indictment erroneously described those monies as "federal program" monies is no more legally significant than the erroneous description of the birth certificates in *Ramirez* or the erroneous description of the illegal alien in *Robles-Vertiz*.

Fantroy's apparent attempt to claim that the amendment to the indictment deprived him of proper notice of the charges against him is also without merit. The indictment clearly charged that Fantroy stole or embezzled monies held in trust for Paul Quinn College. There is no doubt that Fantroy was properly informed of the monies that he allegedly embezzled or stole. In fact, during closing argument, Fantroy's lawyer did not dispute that Fantroy had taken monies that were held in trust for Paul Quinn College. "I'm not going to dispute that Mr. Fantroy wrote checks out of CDC account[s] to himself as loans," Fantroy's lawyer said. He went on to tell the jury "you're going to go back and there's going to be somebody saying but he took some

8

money.  I am not saying he didn't. . . . He may be guilty of a state theft charge, but he's not guilty of a federal crime." Fantroy's Sixth Amendment right "to be informed of the nature and the cause of the accusation" was not violated.  U.S. Const. amend. VI.

Even if the Government had not moved to formally amend the indictment at the start of the trial, the Court's charge to the jury at the end of the trial would not have had to require proof that the monies allegedly stolen were "federal program" monies.  The Court is of the opinion that the case could have been properly submitted to the jury without requiring proof that the monies allegedly stolen were "federal program" monies. Consequently, Fantroy was not prejudiced by the Court allowing the Government to amend the indictment at the beginning of the trial.  Because the amendment to the indictment in this case removed only allegations that were "unnecessary to an offense that was clearly contained" in the indictment, the amendment was proper and did not violate Fantroy's constitutional rights.  *Miller*, 471 U.S. at 141.

### III.  Conclusion

The Court concludes that Fantory's request for judgment of acquittal and motion for new trial are without merit.

**SO ORDERED**.

Signed June 16th, 2008.

*Ed Kinkeade*
ED KINKEADE
UNITED STATES DISTRICT JUDGE